# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| JOSPEH LEWIS ROSINA, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:12-CV-00399 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Joseph Lewis Rosina, Jr. ("Rosina") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Rosina alleges that that the ALJ failed to find certain impairments severe, that Rosina is entitled to a closed period of disability, and that the ALJ committed legal error when denying Rosina continuing disability.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that the ALJ did not err in her determination of the severe impairments affecting Rosina and that substantial evidence supports the ALJ's determination that Rosina was not disabled at any time following the alleged onset of disability. Furthermore, I find that the continuing disability standard is inapplicable and that no legal error

---
[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

was committed by the ALJ. As such, I **RECOMMEND DENYING** Rosina's Motion for Summary Judgment (Dkt. No. 9), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 14.

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Rosina failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Rosina bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

The Commissioner uses a five-step process to evaluate a disability claim. <u>Walls v. Barnhart</u>, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Rosina was born on July 12, 1961 (Administrative Record, hereinafter "R." at 163), and is considered younger person under the Act. 20 C.F.R. § 404.1563(c). Rosina is insured through December 31, 2013 (R. 203); therefore he must show that his disability began before the end of his insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Rosina completed high school and attended two years of college, but has not obtained any degree. R. 31. Rosina was employed by the U.S. Postal Service, starting as a mail clerk, then as a clerk supervisor, and later as a mail handler. R. 46, 215, 222. Rosina also briefly worked as a car salesman. R. 46,

215. Rosina reported that during the relevant period, he had the capacity to perform household chores, go fishing, read, visit others, shop for groceries, and manage his finances. R. 227–33.

## Claim History

Rosina protectively filed for DIB on April 21, 2008 claiming that his disability began on February 28, 2008. R. 203. The state agency denied his application at the initial and reconsideration levels of administrative review. R. 51–55, 62–64. On October 5, 2010, ALJ Geraldine H. Page held a hearing to consider Rosina's disability claim. R. 26–50. Rosina was represented by an attorney, Susan Waddell, at the hearing, which included testimony from Rosina and vocational expert Donald Anderson. R. 26.

On October 25, 2010, the ALJ entered her decision denying Rosina's claims. R. 10–21. The ALJ found that Rosina suffered from severe impairments of spondylolytic spondylolisthesis at L5-S1 status post hemilaminectomy and diskectomy in August 1999 and an anterior lumbar interbody lumbar fusion in December 2008; rotator cuff tear in the right shoulder status post arthroscopy surgery in September 2010; and early degenerative arthritis of the knees. R. 12–14. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15. The ALJ further found that Rosina retained the residual functional capacity ("RFC") to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours our of an 8 hour workday; stand and/or walk for 2 hours out of an 8 hour workday; push/pull in the lower extremities equivalent to the lift/carry amount; and occasionally climb ramps/stairs, balance, kneel, crawl, stoop, crouch, and reach overhead with the right upper extremity. However, the claimant can never work around hazardous machinery, work at unprotected heights, climb ladders/ropes/scaffolds, or work on vibrating surfaces.

R. 15. The ALJ determined that Rosina could not return to his past relevant work as a mail handler, mail clerk, automobile salesman, and mail clerk for the postal service (R.19), but

4

that Rosina could work at jobs that exist in significant numbers in the national economy: namely order clerk, inspector/tester/sorter, and cuff folder. R. 20. Thus, the ALJ concluded that he was not disabled. R. 21. On June 27, 2012 the Appeals Council denied Rosina's request for review (R. 1–3), and this appeal followed.

## **Severe Impairments**

Rosina contends that the ALJ failed to find as severe certain impairments alleged by Rosina and that the ALJ failed to consider all of Rosina's impairments when determining Rosina's RFC. Specifically, Rosina argues that the ALJ failed to find Rosina's alleged mental impairments severe and ignored certain physical diagnoses of Thomas Phillips, M.D., a consulting state agency physician.[2] In her written opinion, the ALJ reviewed the medical records addressing Rosina's mental condition, but ultimately concluded that Rosina's "affective/mood disorder and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." R. 13. The ALJ determined Rosina's spondylolytic spondylolisthesis, rotator cuff tear in the right shoulder, and early degenerative arthritis of the knees to be severe, and found that all other physical impairments were non-severe or not medically determinable.

I find that the substantial evidence supports the ALJ's decision. The record reflects that although Rosina has back, shoulder, and knee ailments that prevent him physically from doing the work he had done in the past, he retains the ability to perform other jobs. Moreover, the ALJ was entitled to find Rosina's mental impairments nonsevere based on the evidence in the record. The ALJ did not err in finding Rosina's other impairments, both mental and physical, nonsevere and that the ALJ did not commit error when determining Rosina's RFC. Even if the ALJ erred at

---

[2] Placed at issue by Rosina on appeal are Dr. Phillips' secondary diagnoses of "discrepancy with pelvic obliquity" and "rotational deformity at L5-S1." R. 436.

step two in determining which impairments were severe, this error is cured by the ALJ's complete review of Rosina's impairments at step four when determining Rosina's RFC.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. § 404.1521(a). Rosina as claimant bears the burden of proof in showing that these impairments were severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

*Mental Impairments*

Rosina maintains that the ALJ erred in failing to find as severe his mental impairments based upon the report of Dr. Gudrun Freeman that he would have some moderate limitation in some mental work activities. Significantly, Rosina does not identify any evidence that shows that his mental limitations caused more than a minimal disruption in his functional abilities. The record reveals that Rosina had some symptoms of mental impairments, but was not functionally limited by them in any significant way during the period of alleged disability. The symptoms from these impairments decreased when Rosina was compliant with his medications. In fact, Rosina denied any problems paying attention, following instructions, getting along with authority figures, handling stress, and handling changes in routine when he applied for disability. R. 255–56.

The medical evidence in the record supports the ALJ's finding that Rosina's mental impairments are non-severe. State agency psychiatrist E. Hugh Tenison, Ph.D. performed a

consultative assessment of Rosina's mental health on July 16, 2008. R. 423–35. Dr. Tenison found Rosina's anxiety to be a medically determinable impairment, but also found that Rosina's anxiety had no impact on his activities of daily living and did not cause difficulty in maintaining social functioning, and only mildly impacted his ability to maintain concentration, persistence or pace. R. 433. Dr. Tenison found Rosina's mental allegations "minimally credible." R. 435.

On August 4, 2008, Rosina saw a family doctor, Randall Rhea, M.D., for complaints of depression. R. 448. Dr. Rhea noted Rosina's slightly depressed affect and recommended that Rosina resume taking Celexa, an antidepressant, and that Rosina continue counseling. R. 449.

Louis A. Perrott, Ph.D. performed a second consultative assessment of Rosina's mental health on April 10, 2009. R. 481–93. Dr. Perrott found Rosina's anxiety, as well as his depression, to be medically determinable impairments but similarly determined that these impairments had little to no impact on Rosina's functioning. R. 491. Dr. Perrott concluded that Rosina's complaints of mental limitations were only minimally credible, and that the medical evidence "does not indicate a severe mental impairment." R. 493.

Rosina again reported being depressed to his family physician Dr. Rhea as the result of stress on October 2, 2009. R. 497. Rosina told Dr. Rhea that he wanted to try a new counselor. Rosina also wondered if he were manic depressive, since that he had been in a good mood some of the time. Dr. Rhea observed Rosina to have a normal mood and affect. R. 498. Dr. Rhea noted that Rosina "seems to be doing well," continued Rosina on Celexa, and recommended a new counselor. R. 499. At another visit two months later, Dr. Rhea prescribed lithium after suspecting continuing manic depression. R. 501. Dr. Rhea again recommended to Rosina that he continue counseling.

Rosina saw psychiatrist Gudrun Freeman, Ph.D. a dozen times for therapy sessions beginning in December 2009 and ending in August 2010. R. 558–61. At his initial visit, Rosina complained of stress relating to his marriage and stepchildren. R. 555. Rosina confirmed that he was taking lithium. Results of Dr. Freeman's mental status examination were unremarkable, as Rosina was oriented and alert, with an appropriate affect and normal mood. R. 556. His thought process, perception, and memory were all normal as well. Dr. Freeman made a provisional diagnosis of bipolar disorder, with treatment goals of sorting out Rosina's feelings and "bring[ing] his outbursts under control." R. 556–57. Rosina continued to make regular visits to Dr. Freeman through August 2010, with generally the same complaints of anxiety and depression related to marital problems. R. 558–61.

According to treatment notes, Rosina had discontinued Celexa by at least January 5, 2010. R. 503. At a visit with Dr. Rhea on January 5, 2010, Dr. Rhea noted Rosian's normal mood and affect. R. 504. However, in March of 2010 Rosina's family physician Dr. Rhea prescribed Celexa again in addition to the lithium he had been taking. R. 507, 509, 559. Although he reported to Dr. Freeman that the Celexa did not help, Dr. Rhea's treatment notes show that on March 31, 2010, Rosina's bipolar status was stable and that his anxiety was at baseline. R. 515. Rosina also complained of stress-related shaking, but it was not evident at the visit with Dr. Rhea on March 8, 2010. R. 505, 507.

On September 17, 2010, Dr. Freeman completed a mental RFC assessment of Rosina which generally found Rosina to be not significantly limited in his functioning as the result of his anxiety and depression. R. 562–64. On the check-box form, Dr. Freeman did suggest that Rosina would be moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work with others without

8

being distracted by them; complete workdays and workweeks without interruption; accept instructions and respond appropriately to criticism; and get along with others without distracting them or exhibiting behavioral extremes. R. 562–63. In the majority of categories, Dr. Freeman did not note any significant limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. In no category did Dr. Freeman determine Rosina to be markedly limited. R. 562–63.

At the administrative hearing, Rosina testified that "used to have" bipolar symptoms but that "I haven't had it lately, because now I'm on the medicine." R. 37. Rosina stated that he continues to have symptoms of depression, but that the medicine "definitely alleviates" the symptoms. R. 37–38.

The evidence in the record provides a substantial basis for the ALJ's decision to find that Rosina's alleged mental impairments, singly and in combination, are non-severe. Although it is not entirely clear precisely when Rosina was compliant with his medication during the relevant period, it is apparent that when he was taking his medication as instructed the symptoms of anxiety, bipolar disorder, and depression lessened. The various treatment records from Dr. Rhea as well as Rosina's hearing testimony support this notion. Moreover, Dr. Freeman's mental RFC assessment generally shows that Rosina is not limited by his mental impairments in any significant way. The opinions of two state agency consulting psychiatrists, Dr. Tenison and Dr. Perrott, likewise provide support to the ALJ's conclusion that Rosina's mental impairments were non-severe.

To the extent that Dr. Freeman's check-box RFC assessment supports a finding of a severe mental impairment, the ALJ was entitled to accord little weight to the determinations made on the check-box form. Dr. Freeman's own treatment notes only document Rosina's

9

subjective complaints. Only the records from Rosina's initial visit with Dr. Freeman contain findings of a mental status examination, and the results of that examination do not support a finding of a severe impairment. Dr. Freeman also did not provide any written explanation of the findings on the check-box form. See McCoy v. Astrue, 1:10-3139-RBH-SVH, 2012 WL 1015785, at *16 (D.S.C. Feb. 10, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir.1993)) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Therefore, I cannot say that the ALJ committed error when finding that Dr. Freeman's own records do not support the findings of limitation in some functional areas.

The court notes that the ALJ's reference and partial reliance of her observations of Rosina during the administrative hearing (R. 19) in discrediting Rosina was not error. While the Fourth Circuit and this District have frowned upon the "sit and squirm jurisprudence" of ALJ's, see Woods v. Heckler, 625 F. Supp. 1450, 1454 (W.D. Va. 1986), I find that the ALJ's comment on Rosina's demeanor during the hearing was not improper. The ALJ noted Rosina's lack of symptoms and performance at the hearing, but acknowledged that the "hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of functioning." R. 19. The ALJ gave only slight weight to these observations. This was just one consideration of many relied on by the ALJ, and I find that it is within the permissible purview of the ALJ to rely on such observations to the extent done here.

As detailed above, the ALJ conducted an adequate review of independent medical evidence indicating that Rosina was not disabled by his alleged mental impairments. Therefore, I find that remand is not warranted on these grounds.

*Physical Impairments*

With regard to Rosina's physical impairments, substantial evidence supports the ALJ's finding that Rosina's alleged impairments of "leg length discrepancy with pelvic obliquity" and "rotational deformity at L5-S1" are nonsevere. The evidence shows that the leg length discrepancy was no more than a slight abnormality that did not independently affect Rosina's ability to work. Furthermore, Rosina does not identify any functional limitations caused by Rosina's spinal rotational deformity that were not accounted for when the ALJ determined his spondylolytic spondylolisthesis to be severe. The ALJ considered all of Rosina's impairments, severe and nonsevere, when developing the RFC at step four. Thus, any limitations from these physical conditions were considered and incorporated into the RFC. Ultimately, substantial evidence supports the ALJ's final RFC.

As to Rosina's leg length discrepancy, Rosina stated at the administrative hearing that his only problem with walking was a "slight limp." R. 38. The ALJ followed up by asking Rosina if he had one leg shorter than the other one. Rosina responded no, that his limp was the product of his original back problem. R. 38–39. This testimony is generally supported by the medical record, which identifies Rosina's back troubles as the main source of his functional limitation. For instance, July 2009 records suggest that Rosina's limp results from knee pain stemming from his spine condition. R. 548. This degenerative arthritis of the knee was accounted for and deemed severe by the ALJ. R. 12. Imaging identified his leg length discrepancy in June 2008 (R. 422), however no evidence suggests that this was an independent cause of any functional impairment. Although the objective medical evidence established that the leg length discrepancy was medically determinable, the evidence does not establish that the condition did not rise to the level of a severe impairment. In light of the medical record, as well as Rosina's own testimony

11

suggesting only slight abnormality, the ALJ was within his discretion to determine that his leg length discrepancy was nonsevere.

As to Rosina's back rotational deformity at L5-S1 noted by Dr. Phillips, there is no evidence to suggest that the deformity caused any functional impairment above and beyond the spondylolytic spondylolisthesis at L5-S1 which was determined to be severe. The ALJ's final RFC adequately accounts for Rosina's back impairment and his decision is supported by substantial evidence. A brief summary of the relevant medical evidence and opinion regarding Rosina's back condition is as follows.

Rosina suffered an injury while moving boxes at work for the postal service and underwent back surgery in 1999. R. 351–52. An MRI from October 2007 showed that Rosina had developed grade 1 spondylolisthesis at L5-S1 post-surgery. R. 323. Rosina visited neurosurgeon Dr. James M. Vascik numerous times thereafter in reference to a workers compensation claim.

In late February and early March of 2008, Dr. Vascik submitted a letter and attending physician's report to the U.S. Department of Labor in reference to Rosina's workers compensation claim. R. 314–16. In the report, Dr. Vascik noted that Rosina was likely never to resume his regular work again and that Rosina should be retrained. R. 314. In the March 2008 letter, Dr. Vascik concluded that he didn't believe that Rosina could be employed at that time. R. 316. Dr. Vascik wrote a follow-up letter in May 2008 clearing up his position on Rosina's functional ability, stating that he did not state that Rosina was unsuitable for limited duty with the post office. R. 395. Dr. Vascik further stated that "I do not feel that [Rosina] is unable to sit and do simple grasping for two to four hours a day, and occasionally standing to cut bundles of mail. That is something he should be able to do." R. 395.

Dr. Vascik referred Rosina to Dr. James Leipzig, an orthopedic spine surgeon in April 2008 for a possible fusion to treat his back condition. R. 399. At his initial visit June 5, 2008, Dr. Leipzig diagnosed Rosina's spondylolytic spondylolithesis of L5-S1, degenerative disc disease at L5-S1, leg length discrepancy with pelvic obliquity, rotational deformity at L5-S1 and status post prior lumbar discectomy of the right L5-S1. R. 422. Dr. Leipzig determined Rosina to be a candidate for a spinal fusion. R. 422.

On July 16, 2008, consulting state agency physician Thomas Phillips, M.D. completed a physical RFC assessment. R. 436–43. Dr. Phillips concurred with Dr. Leipzig's diagnoses from June 5, 2008. R. 436. Dr. Philips concluded that Rosina could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of at least 2 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and an unlimited ability to push and/or pull. R. 438. Furthermore, Dr. Phillips determined that Rosina could occasionally climb, balance, stoop, kneel, crouch, and crawl. R. 439. Dr. Phillips noted no environmental limitations, with the exception of limiting all exposure to hazards such as machinery and heights. R. 440.

Rosina underwent a spinal fusion at L5-S1 in December 2008 to address the instability in his back. R. 460–67. Two weeks later, Rosina reported that he was "doing well" (R. 457) and six weeks post-surgery Dr. Leipzig noted that Rosina "maintained excellent reduction of the deformity." R. 456. At Rosina's eight-month follow up visit, Dr. Leipzig stated that Rosina was "doing quite well" but that he had developed knee pain. R. 548.

A second consulting state agency physician, Robert McGuffin, M.D. conducted a physical RFC assessment on April 10, 2009. R. 474–80. Dr. McGuffin's evaluation projected Rosina's functional capacity twelve months after Rosina's fusion in December 2008. R. 474. Dr.

McGuffin concluded that by December 2009 Rosina could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and that Rosina would have limited ability to push and/or pull in his lower extremities. R. 475. Dr. McGuffin further projected no environmental limitations, except that Rosina should avoid concentrated exposure to hazards such as machinery and heights. R. 477.

This administrative record as a whole reflects that while Rosina no longer can meet the physical demands of his past work with the post office, he retains the ability to perform other, more limited work encompassed by the RFC. Rosina's treating doctors and the state agency consultants agreed that Rosina can still perform less physically-demanding work. Indeed, Rosina testified at the hearing that he is retraining for a different career where he could "end up working with my hands…not sitting too long, not standing too long." R. 43. This testimony cuts against Rosina's alleged disabling symptoms and suggests a concession that there is other work he is able to perform. The medical records indicate that Rosina has recovered well from surgery, although there are lingering symptoms that cause limitations. However, these limitations are adequately captured by the ALJ in her final RFC. The ALJ applied the most restrictive state agency RFC, and included an additional limitation that Rosina should only occasionally reach overhead with his right arm. R. 18.

Even assuming the ALJ committed error in determining the disputed mental and physical impairments non-severe at step two, the error would be harmless. Brooks v. Astrue, 2012 WL 1022309, *11 (W.D. Va. Mar. 26, 2012) (finding harmless error where ALJ considered effects of all of claimants severe and non-severe impairments in subsequent steps). Having considered the evidence regarding Rosina's severe back, shoulder, and knee impairment at step two, the ALJ

considered the entire record of impairments, both severe and nonsevere, when determining Rosina's RFC. R. 15–19. Thus, any defect in subsequent steps is harmless error, as the ALJ considered all impairments and developed an RFC that is well supported by the record.

### **Closed Period and Continuing Disability**

Rosina argues that the evidence in the record supports a finding of disability for a closed period between February 28, 2008 and December 2, 2009. Rosina further asserts that the case should be remanded for review of disability beyond December 2, 2009 under a "continuing disability review standard." Pl.'s Br. Summ. J. 7. In support of remand, Rosina relies on the assessment of state agency consulting physician Robert McGuffin, M.D. and the opinions of neurologist James M. Vascik, M.D. discussed above.

Rosina's interpretation of Dr. McGuffin's opinion is unavailing. In the assessment, Dr. McGuffin stated that Rosina's "symptoms are partially credible but claimant can perform work as described on this RFC 12 months after surgery or 12/09." R. 480. Rosina construes this to mean that Dr. McGuffin "felt that Rosina would be disabled for one year after the spinal fusion surgery." Pl.'s Br. Summ. J. 6. However, Dr. McGuffin simply assessed Rosina's functional capacity at a point in time 12 months after his December 2008 spinal fusion surgery. Nothing in Dr. McGuffin's opinion suggests that he believed Rosina would be disabled for the entire 12 month period following the surgery.

The ALJ did not improperly evaluate Dr. Vascik's letters to the Department of Labor in reference to Rosina's worker's compensation claim. While Dr. Vascik's February 2008 letter states that Dr. Vascik did not believe Rosina could be employed at that time following his December 2008 surgery (R. 316), Dr. Vascik's May 2008 letter cleared Rosina for more limited duty. R. 395. Moreover, Dr. Vascik's March 2008 attending physician's report indicated that

while Rosina was unlikely to be able to return to his regular work, Rosina should be retrained to perform lighter work. R. 314. I do not find that the ALJ erred in considering the opinion of Dr. Vascik.

Finally, the continuing disability evaluation standard contained in 20 C.F.R. § 404.1594(f) is inapplicable to Rosina's case. This review process applies where a person who receiving benefits has those benefits terminated and requests review of the cessation of benefits. See, e.g., Guiton v. Colvin, 2013 WL 5943517 (4th Cir. Nov. 7, 2013). That is not the posture of the present case, as Rosina was denied disability benefits outright.

For the reasons stated above, the ALJ's determination that Rosina was not disabled is supported by substantial evidence. Likewise, I find that the ALJ's decision to not award a closed period of disability between February 28, 2008 and December 2, 2009 does not warrant remand.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

          Enter: January 29, 2014

          *Robert S. Ballou*

          Robert S. Ballou
          United States Magistrate Judge